JOHN L. RODGERS & another *vs.* FREDERICK JONES & another.

Suffolk.    Nov. 18, 1878. — Sept. 14, 1880.    COLT & MORTON, JJ., absent.

The defendant made an oral agreement with the plaintiff for the purchase of a
specific lot of skins, at an agreed price per pound for merchantable skins and
another price for damaged skins, and directed a third person to see them put
up, and not to take them away before a certain day, because the defendant
wished to ascertain in regard to his insurance. The third person agreed to
take them away on the day named, and assorted part of the skins, and then
left, saying he would risk the plaintiff doing it all right. The plaintiff then
assorted the rest of the skins, ascertained their weights in the usual man-
ner, entered the weights in his books, and put all the skins apart in bundles,
marked with the defendant's initials. The third person did not take them
away on the day named, and they were destroyed by fire the following night.
*Held*, that there was not an acceptance and receipt of the skins, within the
statute of frauds.

GRAY, C. J.    This is an action of contract to recover the
price of a lot of rough calfskins, alleged to have been sold and
delivered by the plaintiffs to the defendants.

The testimony introduced by the plaintiffs at the trial was to
the following effect: On Wednesday, November 6, 1872, the lot
of calfskins in question was piled, apart from other goods, in the
plaintiffs' warehouse, when Frederick Jones, one of the defend-
ants, came in with one Kuebler, (a currier, who was to curry
the skins when the defendants bought them,) and made an oral
agreement with John L. Rodgers, one of the plaintiffs, to pur-
chase the entire lot, at a certain price per pound for the mer-
chantable skins, and two thirds that price for the "culls" or
damaged skins; and then said to Kuebler, "I have bought this
lot of skins, and I want you to stay and see them put up; but I
don't wish you to take them away before Friday or Saturday,
because in the mean time I want to ascertain in regard to my
insurance." Kuebler answered that he would send his team and
take the skins on Saturday. Jones then left the warehouse,
and Kuebler remained and assorted about half the skins, throw-
ing them over and separating the merchantable from the dam-
aged skins, and then went away, and the plaintiffs assorted
the rest of the lot.

The expression "putting up the skins" means assorting,
bundling and weighing. The skins are first assorted by putting

the merchantable skins in one pile, and the damaged ones in another. They are then put in bundles, taking out every twentieth merchantable skin as a test, and weighed. The test skins are then weighed by themselves, spread to dry for at least twenty-four hours, and then reweighed, and the amount of shrinking on the whole lot is ascertained by a calculation based upon the shrinking of the test skins.

The plaintiffs put up this lot of skins in the usual way. The test skins were spread to dry from Thursday night to Saturday morning, and then reweighed, and the weights entered on the plaintiffs' books, and the plaintiffs set the whole lot of skins apart by itself in bundles marked with the defendants' initials. On Saturday, November 9, Kuebler came into the plaintiffs' warehouse, was told that the skins were ready for him to take, and was asked whether his team would be there soon, and he answered that it would not. Nothing further took place, and during the following night the skins were destroyed by fire.

The plaintiffs offered evidence that on Wednesday, after Jones had left their warehouse, and after Kuebler had ceased assorting the skins and before he went away, the following conversation took place between him and Rodgers : Kuebler said, " There is no need of my staying here any longer. This is a good lot of skins. There is no chance for any question as to quality of the skins, and you go ahead and put them up." Rodgers answered, " No, Mr. Jones left you to see them weighed up. It won't take you a great while to go over the rest of them ; you do it." But Kuebler said, " No, I can't waste my time. I know you well enough. I 'll take the risk of your doing it all right. You go ahead and put up the skins." This evidence was objected to by the defendants, and excluded by the judge, on the ground that there was nothing to show that Kuebler had authority to bind the defendants by anything he did say.

The judge, at the request of the defendants, ruled that there was no such evidence of acceptance and delivery of the skins as would entitle the plaintiffs to recover in this action, and ordered a verdict for the defendants ; and the case comes before us on the plaintiffs' exceptions.

It is evident that the learned judge used the word " delivery " to denote what is necessary to pass the title as between seller and buyer; and that the effect of his ruling was that the plaintiffs had failed to prove either of two facts, both of which must be proved in order to maintain the action: 1st. The passing of the title between the parties, at common law. 2d. An acceptance and receipt, within the meaning of the statute of frauds. Gen. Sts. c. 105, § 5.

It is unnecessary to decide whether, under the peculiar circumstances of this case, the jury would have been warranted in finding that the title in the goods passed to the defendants when they had been assorted and set apart by the plaintiffs in the absence of the defendants and their agent. In order to constitute an acceptance and receipt under the statute of frauds, it is not enough that the title in the goods has vested in the buyer; but he must have assumed the legal possession of them, either by taking them into the custody or control of himself or of his authorized agent, or by making the seller or a third person his bailee to hold them for him, so as to terminate the seller's possession of the goods and lien for their price. Allowing the utmost effect to the testimony introduced and offered by the plaintiffs, yet, so long as the goods had not been delivered to the defendants or their agent, but remained in the plaintiffs' warehouse, the plaintiffs, even if they could be held to have parted with the title, had not parted with their possession as sellers, or with the lien incident to such possession; and therefore there has been no such acceptance and receipt as to satisfy the statute of frauds. *Safford* v. *McDonough*, 120 Mass. 290. *Atherton* v. *Newhall*, 123 Mass. 141. If Kuebler had authority to receive the goods in behalf of the defendants, there is no evidence that he exercised that authority.

*Exceptions overruled.*

*S. B. Ives, Jr. & G. L. Huntress*, for the plaintiffs.

*E. D Sohier*, (*F. C. Welch* with him,) for the defendants.