Chicago Metal Refining Co. v. Jerome Trading Co., 218 Ill. App. 333.

---

## Chicago Metal Refining Company, Appellee, v. Jerome Trading Company, Appellant.

## Gen. No. 25,230.

1. SALES, § 143*—*when receipt of goods is necessary.* Under Uniform Sales Act, sec. 4, subdivs. 1 and 3 [Callaghan's 1916 Stat. ¶ 10021(7)], actual and intentional receipt of the goods by the buyer is essential, even though before delivery the buyer expresses by words or conduct his assent to becoming the owner of the specific goods.

2. SALES, § 18*—*when acceptance is necessary.* Under the Uniform Sales Act [Callaghan's 1916 Stat. ¶ 10021(7)], a contract for the purchase of goods the value of which exceeds $500 which were not to be manufactured especially for the buyer by the seller and which the buyer did not accept wholly or in part, and nothing being given in earnest to bind the contract or in part payment and no note or written memorandum of the contract being signed by the buyer, is unenforceable.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed with finding of facts. Opinion filed May 28, 1920.

GEORGE B. COHEN, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

No appearance for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $290.70 rendered by the municipal court of Chicago against the defendant (appellant) in an action in contract tried before the court without a jury.

In plaintiff's statement of claim it is alleged, in substance, that on or about November 19, 1916, plaintiff sold to defendant 68,400 pounds of cement sacks at $25 per net ton, f. o. b. plaintiff's yard; that on or about November 29, 1916, at defendant's request, it shipped a car of such sacks to defendant; that defendant refused to accept the car; and that thereafter plaintiff resold the sacks on the open market at the then market price of $13.50 per net ton and thereby suffered damage. In its amended affidavit of merits defendant denied the sale of said cement sacks, and alleged, in substance, that some time in November, 1916, plaintiff submitted to it a sample of a second-hand cement bag, saying that plaintiff had a carload of bags like the sample; that defendant said it would buy the carload if the same was like the sample at $25 per net ton; and that when the car came the bags were inspected and were found not to be like the sample, in that the bags were wet and frozen, and defendant refused to accept the same and returned the car to plaintiff. As a further defense it is stated in said affidavit of merits that defendant "pleads the statute of frauds"; that the alleged sale referred to in plaintiff's statement of claim "was a sale of goods of the value of $500 or upwards," that "the buyer did not accept part of the goods sold and actually receive the same," and did not "give something in earnest to bind the contract or in part payment," and that "there was no note or memorandum in writing of the sale signed by the defendant or any agent in its behalf."

Morris Goldstein, president of plaintiff, was the only witness called in its behalf, and Jacob J. Cohen, president of defendant, and Moses Lieberman, foreman of defendant's shop, were the only witnesses for defendant. As to what occurred at the first meeting of Goldstein and Cohen there is a sharp conflict in their testimony. Goldstein testified, in substance, that in November, 1916, he showed Cohen a car of secondhand cement bags then standing in plaintiff's yard; that Cohen examined the contents of the car and said he would give plaintiff $25 a ton for the bags, which offer was accepted; that Cohen directed Goldstein to have the car delivered to defendant; and that Goldstein gave an order to the carriers to deliver the car to defendant. Cohen denied seeing or making any examination of any car of cement bags in plaintiff's yard, and testified, in substance, that at the interview Goldstein said plaintiff had a car of secondhand cement bags to sell; that Cohen said he would only buy such bags by sample; that Goldstein showed him a sample of the bags, which sample Cohen retained; that Cohen then said defendant would purchase the car if the bags therein were like the sample shown; that the price agreed upon subject to said condition was $25 per ton; and that he (Cohen) directed Goldstein to "send down the car." Cohen further testified, in substance, that about December 10, 1916, the car arrived on the Santa Fe team track about 15th and Dearborn streets; that on December 12, 1916, he personally inspected the contents of the car and found that the bags did not comply with the sample shown; that on the same day defendant wrote plaintiff a letter, as follows: "We have thoroughly inspected car and found the same to be all wet and frozen, and cannot use the same at any price. This car is not like sample shown us or anywhere near it. We have notified the Santa Fe R. R. Co. that we have rejected the car"; and that subsequently the car was returned to plaintiff. Goldstein admitted that

plaintiff received said letter and that the car was returned to plaintiff. The witness Lieberman also inspected the contents of the car and corroborated Cohen as to the bad condition of the bags and of their not conforming to the sample. Goldstein further testified, in substance, that there were over 60,000 pounds of bags in the car, and that, after the return of the car to plaintiff, he sold the bags for $16 a ton, being the best price he could obtain for them.

In addition to the contention that the finding and judgment are against the weight of the evidence, counsel for appellant contends that the judgment cannot stand, for the reason that, if any contract to sell the bags was made (the value being over $500), such contract is not enforceable under section 4 of the Uniform Sales Act, in force July 1, 1915. (Hurd's Stat. 1917, ch. 121a, sec. 4, Callaghan's 1916 Stat. ¶ 10021[7].) We have not been favored with any brief or argument on behalf of appellee (plaintiff). The section of the statute referred to is as follows: -

"Sec. 4. Statute of frauds. (1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not

suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.

"(3)   There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

Plaintiff alleged, in substance, that it made a contract to sell to defendant more than 30 tons of secondhand cement bags at an agreed price of $25 per ton, that pursuant to the contract it shipped the bags to defendant but defendant refused to accept them.   The value of the bags was over $500.   It is undisputed that the alleged contract was a verbal one, that no note or memorandum in writing of the same was signed by defendant or any agent of defendant, that nothing was given by defendant in earnest to bind the contract or in part payment, and that the bags, being secondhand bags, were not to be manufactured by plaintiff especially for defendant.   Even on the assumption that Goldstein's testimony as above outlined is correct and that, after Cohen had inspected the bags contained in the car in plaintiff's yard, Cohen told Goldstein that defendant would buy the bags at a certain price, defendant did not then or at any time thereafter "actually receive the same," or any part thereof.   In 25 Ruling Case Law, p. 621, sec. 237, it is said:

"For the purpose of taking a contract of sale out of the operation of the statute the excepting clause as to delivery usually requires 'receipt and acceptance' by the buyer of some part of the goods.   This exception has been a standing puzzle to the courts of England and America for more than two centuries.   *   *   *   The principal difficulty has been to determine precisely what is meant by the term 'acceptance,' as used in the statute.   In order to comply with the requirement there must be delivery, receipt and acceptance.   All three must exist.   While some eminent judges have

338    APPELLATE COURTS OF ILLINOIS.

Chicago Metal Refining Co. v. Jerome Trading Co., 218 Ill. App. 333.

supposed that the terms 'accept' and 'actually receive,' as used in the English statute, were synonymous, it may now be regarded as definitely and finally settled that these terms have distinct meanings, and that both acceptance and actual receipt, which imply delivery, are essential to take the case out of the statute.''

In *Hinchman v. Lincoln*, 124 U. S. 38, 49, it is said: ·

''In order to take the contract out of the operation of the statute, it was said by the New York Court of Appeals in *Marsh v. Rouse*, 44 N. Y. 643, 647, that there must be 'acts of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer as absolute owner, discharged of all lien for the price.' · * * * In *Shindler v. Houston*, 1 N. Y. (1 Comstock) 261, Gardiner, J., adopts the language of the court in *Phillips v. Bristol*, 2 Barn. & C. 511, 'that to satisfy the statute there must be a delivery by the vendor with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner.' · And adds: 'This, I apprehend, is the correct rule, and it is obvious that it can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties. Mere words are not sufficient.' ''

In *Johnson v. Cuttle*, 105 Mass. 447, 449, it is said:

''Mere delivery is not sufficient; there must be unequivocal proof of an acceptance and receipt by him. Such acceptance and receipt may indeed be through an authorized agent. But a common carrier (whether selected by the seller or by the buyer), to whom the goods are intrusted without express instructions to do anything but to carry and deliver them to the buyer, is no more than an agent to carry and deliver the goods, and has no implied authority to do the acts required to constitute an acceptance and receipt on the part of the buyer and to take the case out of the statute of frauds.'' (See also *Rodgers v. Jones*, 129 Mass. 420, 422.)

In *Alderton v. Buchoz*, 3 Mich. 322, the court, in re-

ferring to the statute of frauds concerning contracts for the sale of goods, then in force in the State of Michigan, said that it was not a new provision of law, or of recent origin, but that it was, with some few verbal alterations, a copy of the 17th section of the old English Statute of Frauds, and further said:

"The effect of this statute, in the prevention of frauds and perjuries, has always been regarded as salutary, and has been generally sanctioned and steadily upheld by the judiciary in England and this country; and every rational person must be convinced, upon a moment's reflection, that every provision of this statute ought to be strictly observed, and steadily enforced by courts, without the least laxity through unauthorized or latitudinarian constructions, be the consequences, occasionally to individuals, whatever they may."

In the section of the Illinois statute in question (passed in 1915) the third subdivision thereof provides that "there is an *acceptance* of goods within the meaning of this section when the buyer, either *before* or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." In view, however, of the provisions of the first subdivision of said section "unless the buyer shall accept part of the goods  *  *  *  so contracted to be sold or sold, *and actually receive the same*," we are of the opinion that actual and intentional receipt of the goods by the buyer is essential to satisfy the provisions of the statute, even though before delivery the buyer expresses by words or conduct his assent to becoming the owner of the specific goods. In *Friedman v. Plous,* 158 Wis. 435, 438, it appears that there is a section in the Uniform Sales Act in force in Wisconsin, substantially if not exactly the same as the section of the statute of this State above mentioned, and, in commenting thereon, the court says:

"The statute last referred to seems to separate ac-

ceptance from receipt and provides that the former requirement may be satisfied by words or conduct, while the latter presupposes a delivery by the seller and requires some intentional act or receipt on the part of the purchaser. * * * Acceptance and receipt includes a delivery by the vendor. There could be no receipt and acceptance on the part of the vendee unless the vendor delivered the goods. The acceptance and receipt must be intentional, and mere words are not sufficient to establish delivery and receipt.''

In view of the provisions of the statute, and under the facts disclosed in this record, our conclusion is that the trial court erred in entering the judgment. The basis for the judgment was an alleged contract to sell certain secondhand bags to defendant, the value of which was more than $500. Under the statute that contract was unenforceable because the buyer (defendant) did not give something in earnest to bind the contract or in part payment, and no note or memorandum in writing of the contract was signed by the defendant or its agents, and the bags were not to be manufactured by plaintiff especially for defendant, and the defendant did not accept the bags or any part thereof and actually receive the same.

Accordingly the judgment of the municipal court is reversed.

*Reversed with finding of facts.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.

Finding of facts. We find as facts in this case that, in the alleged contract for the sale of certain secondhand bags to the defendant, Jerome Trading Company, the value of the goods was more than $500; that said defendant did not give something in earnest to bind the contract or in part payment; that no note or memorandum in writing of the contract was signed by said defendant or its agent in that behalf; that the bags

were not to be manufactured by the plaintiff, Chicago Metal Refining Company, especially for said defendant; and that said defendant did not accept the goods or any part thereof and actually receive the same.