**W. F. Hall Printing Company, Appellant, v. Wells Warehouse & Forwarding Company and Cromwell Jones, Appellees.**

**Gen. No. 30,640.**

1. REPLEVIN—*burden of proof as to property right of plaintiff.* The burden of proof is upon the plaintiff in replevin proceedings

W. F. Hall Prtg. Co. v. Wells W. & F. Co., 241 Ill. App. 146.

to show a general or special property in the property sought to be replevined.

2. FRAUDS, STATUTE OF—*invoice as sufficient memorandum of sale of personalty valued in excess of $500, under Cahill's St. ch. 121a, ¶ 7.* An invoice covering merchandise of a value greater than $500, which does not purport to be a contract, does not state that there are any parties to a contract, nor where or when deliveries are to be made, which states figures from which a price might be guessed but states that all prices are subject to change without notice, and which says, "Terms, cash," but fails to state when or how payment is to be made, is not a sufficient memoranda to take the transaction out of the statute of frauds, Cahill's St. ch. 121a, ¶ 7.

3. FRAUDS, STATUTE OF—*delivery of invoice of goods purchased by oral contract as symbolical delivery exempting transaction from operation of Cahill's St. ch. 121a, ¶ 7.* Where an agreement for the purchase and sale of merchandise of a value greater than $500 whereof the seller held warehouse receipts was wholly verbal, the delivery by the seller to the buyer of an invoice of such goods was not a symbolical delivery of the property sufficient to take the transaction out of the statute of frauds, Cahill's St. ch. 121a, ¶ 7.

4. REPLEVIN—*oral purchase of personalty exceeding $500 in value followed by receipt of invoice therefor as establishing property right therein, where payment neither made nor waived.* In view of Cahill's St. ch. 121a, ¶ 7, a purchaser of merchandise of a value greater than $500 whereof the seller holds warehouse receipts, acquires no property interest in such merchandise sufficient to support an action of replevin where there was no payment therefor nor waiver thereof, and the transaction was evidenced only by an invoice which failed to state the essential elements of the agreement orally made between the parties.

5. APPEAL AND ERROR—*waiver of right to object to joinder of additional party by failure to object to intervention and by filing replication to his plea.* Where in the course of replevin proceedings brought by the purchaser of merchandise to secure possession thereof from the warehouse company holding the same as bailee for the seller, who was the real party in interest, an order was made, without objection, making the seller a party defendant, after which issue was joined upon the replication of the plaintiff to the plea which such seller was permitted to file setting up his claim to the property, the plaintiff was thereafter estopped to assert that the court was without jurisdiction to permit the intervention of the seller as defendant in the action.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the first division

of this court for the first district at the October term, 1925. Affirmed. Opinion filed June 14, 1926. Rehearing denied June 29, 1926.

GANN, SECORD & STEAD and PEAKS & BUNCH, for appellant; LOY N. MCINTOSH, MACK C. WYLIE, F. HAROLD BENNETT and ALEXANDER J. RESA, of counsel.

WINSTON, STRAWN & SHAW, for Cromwell Jones, appellee; EDWARD W. EVERETT and GEORGE T. EVANS, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The plaintiff, W. F. Hall Printing Company, a corporation, filed two suits in replevin against the Wells Warehouse and Forwarding Company, a corporation, for the purpose of securing possession of certain rolls of tympan paper, the value of which was alleged to be $8,000. The paper in question was stored with the defendant, Wells Warehouse and Forwarding Company, by Cromwell Jones, and he held non-negotiable warehouse receipts indicating his ownership of the same. Acting under the writs, the sheriff took the paper and delivered it to the plaintiff.

Plaintiff having filed declarations in the usual form, alleging that it was entitled lawfully to the possession of the paper and that the Warehouse unjustly detained the same, etc., defendant Wells Warehouse and Forwarding Company filed a plea disclaiming any right or title in and to the goods and chattels, stating that it held the same upon warehouse receipts issued and delivered to Cromwell Jones.

The suits in question were on July 17, 1924, by order of court consolidated upon petition of Cromwell Jones, and an order was entered by the court permitting him to become a party defendant. He filed certain pleas, to which plaintiff filed a replication and the consolidated causes were submitted to a jury.

At the close of plaintiff's evidence the court, upon motion of defendant, Cromwell Jones, instructed the jury to find the issues in favor of defendants and to find that at the times of the issuance of the writs the defendants, Cromwell Jones and Wells Warehouse & Forwarding Company, were entitled to the possession of the property described in the writs. The jury having returned a verdict as directed, the court overruled motions to set aside the verdict and for a new trial and directed that a writ of *retorno habendo* issue, having overruled the motion of the plaintiff in arrest of the issuance of that writ. From the judgment thus entered the plaintiff prosecutes this appeal.

Disregarding for the present a point made by plaintiff which will be later discussed, namely, the right of Cromwell Jones to intervene and to be made a party defendant to the cause, the controlling question in the case is whether, on the uncontradicted evidence submitted to the jury, the court erred in directing a verdict for the defendants.

There was submitted evidence tending to show the following facts: The plaintiff, W. F. Hall Printing Company, was at the time in question located at 466 West Superior Street, Chicago, where it transacted a general printing business. The place of business of the defendant Warehouse Company was about two blocks south, at 419 West Erie Street. Edward J. Wells was at the time in question president of the Wells Warehouse and Forwarding Company. R. M. Eastman was president, Edwin M. Colvin, vice-president, Charles Oliff, assistant treasurer, and Calvert S. Eastman, purchasing agent of the plaintiff Printing Company.

Cromwell Jones was, by the terms of a written contract which gave him an exclusive agency, the representative in territory west of Buffalo and Pittsburgh of the Domestic Mills Paper Company, a manufacturer of tympan paper, such as plaintiff was accustomed to

use in its business. Under the terms of this agreement Cromwell Jones purchased the paper in question from the Domestic Mills Paper Company and resold it to his customers. R. M. Eastman, president of the plaintiff company, had given a written guaranty of the account of Cromwell Jones with the Domestic Mills Paper Company.

At the time of the transactions out of which these suits grew, one H. L. Sampson, a special representative of the Domestic Mills Paper Company, was in Chicago and was present at a conference held on July 15, 1924, at the Drake Hotel to adjust a claim which had been made by the plaintiff that Jones had been charging too high a price under the circumstances for the tympan paper.

The plaintiff was, the evidence indicates, the best customer for the paper which Mr. Jones had, and it was usual for plaintiff to indicate in advance to Mr. Jones and through him to the Domestic Mills Paper Company, the size and kind of paper which was desired by it for use in connection with its business.

The evidence for plaintiff tends to show that after some wrangling at this conference, Mr. Colvin said to Mr. Jones: "This wrangle has nothing to do with our meeting. What are you going to charge us for that paper in the warehouse?" Finally Mr. Jones said: "How is 10¾? It was generally understood we were talking about tympan paper in the warehouse. Tympan paper is bought by the pound or roll by the the hundred. 10¾ to the unsophisticated mind means cents per pound. At this conversation we were all talking in the language of the trade."

The evidence for plaintiff further indicates that after some talk back and forth, either Mr. R. M. Eastman or Mr. Colvin said: "The price is all right, we will take it"; that Mr. Jones said: "Is this to be a cash transaction?" to which Mr. Eastman replied, "Yes"; that thereafter Mr. Jones or Mr. Eastman

said that plaintiff would give Jones a check for the stock in the warehouse and Jones would in turn pay off his obligation to the Domestic Mills Paper Company; that Colvin reminded Mr. Eastman that he was on Cromwell Jones' guaranty at the Domestic Mills, and that he had better have Jones' check certified, to which Jones replied that his check "was as good as ours without certification."

The testimony for the plaintiff also tended to show that in this conversation Jones inquired, "Well, will this be a cash transaction?" to which Mr. Eastman said, "Yes, this will be a cash transaction. I will tell you how we will handle it, Crom. The Hall Printing Company will make out a check to you and you in turn will make out a check to the Domestic Mills. You go down to the State Bank of Chicago and clear the transaction"; that Mr. Colvin said, "Bob, you know you are guarantor on that account and I think you ought to have Jones' check certified," to which R. M. Eastman replied, "I think it would be best, Crom; let us get it disposed of; get it out of the way, and clean it up. Let us have the check certified and that will dispose of it"; and that Jones said, "Well, if you feel that way about it, all right, Bob, we will get my check certified and we can clean it up that way, go to the bank and clean it up that way," and further Jones said, "I will go back to the office and I will make out an invoice of all the stuff that is over there that was made up for you. I will make it up as soon as I can and try to bring it over in the afternoon."

The evidence for the plaintiff further tended to show that after the paper which plaintiff was accustomed to buy had been manufactured, it was shipped to Chicago to the order of Jones and stored in the warehouse of the defendant Warehouse Company; that the plaintiff did not have room in its building to store this paper, and that its custom was as it needed

its paper for use in its business to call by telephone the office of the Warehouse Company and direct the delivery of the paper to its place of business, specifying the number of rolls and size needed, and in accordance with such directions these rolls would be delivered at the place of business of the plaintiff by trucks belonging to the Warehouse Company, which had placed thereon the words, "Cromwell Jones Tympan Paper." The requisition for the paper would be mailed to the Warehouse Company by the plaintiff.

After the conference of July 15, 1924, Jones went to the office of the plaintiff, where he met Oliff, and said: "Charley, here is a bill of the tympan paper I sold you this morning. When can I get my money?" He thereupon delivered to Oliff the paper which appears in the record as plaintiff's Exhibit 3 and describes itself as invoice No. 738. The material parts of this document were as follows:

"Cromwell Jones
"Domestic Mills                    31020
"Tympan Papers
"413-419 West Erie Street Telephone Superior 9033
"Invoice No. 738
"Salesman
"Order No.
"Sold to W. F. Hall Ptg. Co.
"466 W. Superior St.
"All prices subject to change without notice.
"Via    In Wells Warehouse            Terms: Cash
                    *    *    *
                    (Stamp)
        "Date Rec'd 7-16 & 17
        "Receipt No. 19547-83-84-85
        "Price O. K. 19586-89-90-87-88
        "Extension O. K.    Cle.
        "Entered Job No.
        "Entered Stores KOJ
            "Charge

"Account No.                    Amount
  "Rotary Material
  "Rolls Nos. and weights other side.
                    H.
           *    *    *"

Mr. Oliff then said to Jones: "Crom, I will tell you. I will turn this bill over to Leonard, who is a clerk in the purchasing department, and have him check it up, the weights and extensions, and I will get it back in the morning and tell Leonard to rush it through. You come over about 11:00 o'clock tomorrow morning. Come over about ten or eleven, and we will close the transaction. You will get your money and Sampson will be there. I will make out a Hall Printing Company check on the State Bank of Chicago, and we will clean it up." Defendant Cromwell Jones replied: "All right, Charley, I will be over."

On the morning of July 16, 1924, the plaintiff called the Wells Warehouse & Forwarding Company by telephone and requested that 10 rolls of the tympan paper described in the invoice be delivered to plaintiff on that afternoon at its place of business. It does not appear, however, that the delivery was made by the direction of Jones, but it was delivered in the usual way by trucks belonging to the Wells Warehouse & Forwarding Company, bearing the inscription, "Cromwell Jones Tympan Paper."

Thereafter defendant again called up the warehouse and asked that additional rolls of this paper be sent over, but was informed by the party who talked on the 'phone that the Warehouse Company had received instructions from Jones to make no more delivery of the paper to plaintiff.

Jones did not call at the office of plaintiff on July 16, 1924; he did not go with Oliff and Sampson to the State Bank of Chicago to have checks certified and exchanged, and on July 17 Oliff called Jones by telephone at the office of the Wells Warehouse & Forward-

154    Appellate Courts of Illinois.

W. F. Hall Prtg. Co. v. Wells W. & F. Co., 241 Ill. App. 146.

ing Company, which was the business office of Jones, and asked him if he was coming over, to which Jones replied, "No, I am not coming over, Charley. I consulted my lawyer and I am not going over there to get the check, and I am not going to let you have the paper, either." To Mr. Oliff's question of "Why?" Jones replied, "I have seen my attorney and I am not going to let you have the paper, and I am not coming over for the money."

Plaintiff thereafter made a demand in writing upon the Warehouse Company for the balance of the paper described in the invoice and tendered $75 in currency to pay storage charges. The demand and tender were refused, whereupon writs of replevin were sued out and the papers seized and delivered to plaintiff and used by it.

It is conceded by the plaintiff that the burden of proof was upon it, and that it was necessary for it to show a general or special property in the paper replevied, and that it was necessary for plaintiff to recover, if at all, upon the strength of its own title or right of possession. *Pease v. Ditto,* 189 Ill. 456; *Kee & Chapell Dairy Co. v. Pennsylvania Co.,* 291 Ill. 248.

The controlling question on the merits is whether the plaintiff has shown such right or interest in the property as that a jury might reasonably say that it was entitled to the possession of the paper.

The defendant contends that as the plaintiff bases its right to possession and its title upon an alleged verbal contract, the value of the goods being $8,000 or more, the contract, even though it is conceded to have been made, is not enforceable under the provisions of the statute of frauds, enacted as a part of the Uniform Sales Act by an Act approved June 29, 1915. Section 4 [Cahill's St. ch. 121a, ¶ 7] of that Act provides:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or

upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.''

On the contrary, plaintiff contends that the controlling fact is that ''Mr. Jones voluntarily sold the paper to appellant and as evidence thereof delivered to appellant Plaintiff's Exhibit 3, which was an invoice of the paper in the warehouse, and waived cash payment by saying, 'When do I get my money?' He was bound by the legal effect of the delivery of said invoice, regardless of what the opinion of any of the witnesses to this lawsuit may have been, as to whether or not it probably amounted to an actual sale and delivery of property   *   *   *   delivery of the invoice, Plaintiff's Exhibit 3, voluntarily by Cromwell Jones to appellant, waived any right to have the actual cash paid at that time.  Jones had the right before delivering said invoice to require of appellant that the cash be paid to him.''

While this section of the statute of frauds [Cahill's St. ch. 121a, ¶ 7] has been the law of this State for only a short time, and the decisions of our courts construing it are not numerous, there is a wealth of authority in other States, and some decisions in this State, to the effect that the writing which is sufficient to satisfy the provisions of this section must contain every essential term of the contract which it is sought to enforce.

There was no payment in whole or in part, nor waiver of it, and we do not think that anything could be clearer than that the invoice delivered by Jones to plaintiff was not such memorandum as is required by the statute, since it varies in material respects from

156     APPELLATE COURTS OF ILLINOIS.

W. F. Hall Prtg. Co. v. Wells W. & F. Co., 241 Ill. App. 146.

the terms of the oral contract which the plaintiff attempted to prove (*F. Kieser & Son Co., Inc. v. Hallock,* 201 App. Div. 186, 194 N. Y. S. 737), and it would be wholly impossible to prove the contract therefrom without oral evidence as to the essential terms of it. *Western Metals Co. v. Hartman Ingot Metal Co.,* 303 Ill. 479. In the last case our Supreme Court said:

"It is unquestionably the law that the memorandum upon which it is sought to charge a party to a contract must state the contract with such certainty that its essentials can be known from the signed writing, or by some reference contained in the signed writing to some other writing, without recourse to parol proof to supply the essential elements of the contract or to supply the connecting links between the signed writing and some other writing or writings."

In Corpus Juris, vol. 33, p. 811, it is said:

"Standing alone an invoice is not regarded as evidence of title. It is neither a bill of sale nor evidence of a sale; it does not transfer the title; it is as appropriate to a bailment as to a sale."

To the same effect is Cyc., vol. 23, p. 351. See also the cases there cited.

As was said in *Dows v. National Exch. Bank of Milwaukee,* 91 U. S. 630, "An invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale. * * * Hence, standing alone it is never regarded as evidence of title."

Even a slight examination of the document discloses that it does not purport to be such a memorandum as is required by the statute. It does not purport to be a contract; it does not state that there are any parties to a contract; while it gives figures from which the price might be guessed, it states that all prices are subject to change without notice; it does not state

when or where delivery shall be made; it intimates, "terms—cash," but of when or how and under what circumstances the cash is to be paid, it says nothing. We are driven to the conclusion that no sufficient writing has been disclosed. Nor was there delivery in whole or part within the meaning of the statute. *Illinois Meat Co. v. American Malt & Grain Co.*, 229 Ill. App. 311; *Chicago Metal Refining Co. v. Jerome Trading Co.*, 218 Ill. App. 333.

The plaintiff contends that the delivery of this invoice amounted to a symbolical delivery of the property to plaintiff; but, what we have already said, indicates the futility of that contention. In that connection plaintiff cites *Michigan Cent. R. Co. v. Phillips*, 60 Ill. 190, where as between a vendor and an innocent third party who purchased in good faith, it was said that a transfer of certain wines by an unindorsed bill of lading was as effective to transfer the possession as in other cases would be the delivery of the keys to a warehouse in which the goods were stored. It is certainly not necessary to point out the distinction between a bill of lading and an invoice, or the many other important facts which distinguish that case from this one. We conclude, as a matter of law, that the plaintiff failed to show any title or right to the possession of the goods replevied, and it therefore could not recover in the suit.

But the plaintiff contends that the court erred in permitting Cromwell Jones, the real party in interest, to intervene and become a defendant in the suit, and points out that intervention in a suit at law was not permitted by the common law, and that there is no provision in the statutes of Illinois providing for such a procedure. This point, in so far as the record shows, was not raised by the plaintiff until the cause had been put at issue and the evidence was about to be taken. The plaintiff then objected to the attorneys for defendant Cromwell Jones taking any part in the trial or

cross-examining the witnesses, and the trial court, stating that the objection came too late, overruled it.

There was no motion by plaintiff to strike the appearance of the defendant Jones, nor did the plaintiff ask leave to withdraw its own replication to the pleas of defendant Jones in order that a motion to strike these might be made.

In the briefs of the parties and upon oral argument, interesting questions were raised as to the right of a court of law to permit intervention by a real party in interest in a replevin suit where the party having possession and only a nominal interest was made the only defendant.

What the law might be upon a different record from that which appears here, it is not necessary for us to decide, although in the case of *Wincon v. Egan*, 237 Ill. App. 635, this court seems to have committed itself to the proposition that such right of intervention exists. In that case, speaking through Mr. Presiding Justice McSurely, we said:

"Jamontas could properly intervene and claim title to the property. He should have been made a party to the present replevin suit, as he had title to the property by virtue of the sale. The fact that plaintiff did not make him a party can not deprive him of his right to assert his claim. Any person may intervene whose interest in the property will in any way be affected by the decision in the replevin suit. 34 Cyc. 1426."

Further reference to the opinion discloses that the records in the consolidated cases which were there considered had been lost and that the court was therefore at some disadvantage in the consideration of the case.

The able argument of counsel for the plaintiff seems to concede that, under the record as it here appears, the question can not be raised except upon the theory that the trial court was wholly without jurisdiction. It is not denied that there was jurisdiction of the sub-

ject matter, but the point seems to be that the petition for an order permitting Cromwell Jones to become a defendant was insufficient to confer jurisdiction upon the court.

The petition, however, has not been preserved by any bill of exceptions, and is therefore not visible to the judicial eye. There is no question that the court had jurisdiction of the property, jurisdiction of the plaintiff and jurisdiction of the defendant Warehouse Company.

Without objection, so far as the record shows, an order was entered making Cromwell Jones also a defendant, and without objection he was permitted to file pleas setting up his rights in the property of which the court already had jurisdiction. To these pleas the plaintiff filed a replication. An issue was thus made concerning this property. We think that having proceeded thus far without objection, plaintiff was thereafter, and now is, estopped to assert that the proceedings are void, and we hold that the court was not without jurisdiction or the power to exercise it. Moreover, plaintiff having neither title nor any right to possession, is without just cause to complain.

The judgment of the trial court is affirmed.

*Affirmed.*

JOHNSTON and McSURELY, JJ., concur.